**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE-OPELOUSAS DIVISION**

| | |
|---|---|
| HINKLE OIL AND GAS, INC., ET. AL | CIVIL ACTION NO. 06-1796 |
| VERSUS | JUDGE MELANÇON |
| SEVARG COMPANY, INC. | MAGISTRATE JUDGE METHVIN |

## MEMORANDUM RULING

Before the Court are defendant's Motion for Partial Summary Judgment on Plaintiffs' Claims [Rec Doc. 64] and Memorandum in Support thereof [Rec. Doc. 65], defendant's Motion for Summary Judgment on Counterclaims and Memorandum in Support thereof [Rec. Doc. 66], and plaintiffs' Memoranda in Opposition to defendant's Motions [Rec. Docs. 68 & 69]. For the reasons that follow, defendant's Motion for Partial Summary Judgment on Plaintiffs' Claims [Rec. Doc. 64] will be **GRANTED** and defendant's Motion for Summary Judgment on Counterclaims [Rec. Doc. 66] will be **DENIED**.

## I. BACKGROUND[1]

In October of 2006, plaintiffs, Hinkle Oil and Gas, Inc. ("HOGI") and Concha Energy, LLC ("Concha") (collectively "plaintiffs"), filed suit seeking damages from Sevarg Company, Inc. ("Sevarg" or "defendant") arguing several theories of liability.[2] In response, defendant asserted counterclaims against

---

[1]     At the outset, the Court notes that the quality of plaintiffs' briefs were below the standard expected in this United States District Court. Nonetheless, the Court endeavored to ascertain the arguments plaintiffs attempted to advance where possible.

[2]     Terry Bills was also named as a defendant, but was dismissed by Judgment of this Court on January 8, 2008. *Judgment* [Rec. Doc. 45].

plaintiffs. The central disputes in this matter stem from agreements between the parties concerning certain oil and gas wells and leases. The pertinent facts are as follows:

By letter agreement on July 28, 2001 (the "Letter Agreement"), Tom Bernard, the former majority owner of Sevarg, conveyed to Bert Valentine ("Valentine"), owner of Concha, a 1% overriding royalty interest in certain mineral leases. The Letter Agreement was never recorded in the public records. Subsequently, Concha purchased a 25% working interest from Sevarg in the oil and gas leases by virtue of an "Assignment of Oil, Gas and Mineral Leases" (the "Assignment") recorded on August 13, 2001 in Lease Book 578, Page 934 of the public records St. Landry Parish. On August 1, 2001, Sevarg and Concha executed a Model Form Operating Agreement (the "Operating Agreement") governing the operation of the subject mineral leases.

During the course of Sevarg's bankruptcy, the bankruptcy judge expressly rejected and terminated the Operating Agreement. The order terminating the Operating Agreement was issued pursuant to a hearing on a motion filed by Concha in the bankruptcy court. On July 26, 2004, Sevarg's plan of reorganization (the "Plan") was confirmed by the bankruptcy court. The Plan, as confirmed, created an oversight committee to operate the reorganized Sevarg and stated that "all property of [Sevarg] shall be free and clear of all Liens, Claims, and Interests of Holders of Claims, except as provided in the Plan." The unobjected to Plan contained no mention whatsoever of the 1% overriding royalty

interest.

On August 17, 2004, one of the wells covered by the subject leases, the C.B. Johnson #1 Well, was shut in due to mechanical failure. Concha was informed of this decision on September 8, 2004 and was notified of Sevarg's intention to not restore production of the well. Pursuant to the terms of the lease, Concha could have taken the necessary action to restore production; however, no further efforts were made by any party to restore production of the well.

On October 5, 2004, the bankruptcy court entered an order allowing four separately filed individual claims of Terry Bills, Jr. ("Bills") to be paid. It is unclear from the record before the Court whether an objection was filed to the order before it was signed by the bankruptcy judge. On November 1, 2004, Concha assigned 33.33% of its 25% working interests in the subject leases to HOGI. In 2005, Sevarg relinquished its operator status to Bean Resources, Inc. ("Bean") with respect to 3 wells in exchange for relieving Sevarg of significant plugging and abandoning liability. This transfer was the decision of the Oversight Committee and had no impact on plaintiffs' interests in the wells.

Plaintiffs allege that they were damaged as a result of defendant's actions and alleged several theories of liability including fraud and various others including unjust enrichment and breach of contract. Defendant filed the instant motions seeking a determination by this Court that (1) plaintiffs' claims for attorney's fees is without merit; (2) that the C.B. Johnson Lease terminated as of November 16, 2004, (3) Sevarg's assignment of its interests in three wells to

Bean had no legal impact upon plaintiffs, and (4) plaintiffs' claim for a 1% overriding royalty interest must be dismissed. Defendant also moves the Court to grant summary judgment on its counterclaims concerning Concha and HOGI's proportionate liability for failure to notify Terry Bills, Jr. before certain leases terminated and an assessment of a 300% penalty for Concha's non-participation in the work over of a certain saltwater disposal well. Plaintiffs oppose these motions.

## II.  SUMMARY JUDGMENT STANDARD

A motion for summary judgment shall be granted if the pleadings, depositions and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir.1994)(*en banc*). Initially, the party moving for summary judgment must demonstrate the absence of any genuine issues of material fact. When a party seeking summary judgment bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if such evidence were uncontroverted at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim. *Id.* If the moving party fails to carry this burden, his motion must be denied. If he succeeds, however, the burden shifts to the non-moving party to

show that there is a genuine issue for trial.[3] *Id.* at 322-23. Once the burden shifts to the respondent, he must direct the attention of the court to evidence in the record and set forth specific facts sufficient to establish that there is a genuine issue of material fact requiring a trial. *Celotex Corp.*, 477 U.S. at 324; Fed.R.Civ.Pro. 56(e). The responding party may not rest on mere allegations or denials of the adverse party's pleadings as a means of establishing a genuine issue worthy of trial, but must demonstrate by affidavit or other admissible evidence that there are genuine issues of material fact or law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144. 159 (1970); *Little*, 37 F.3d at 1075. There must be sufficient evidence favoring the non-moving party to support a verdict for that party. *Anderson*, 477 U.S. at 249; *Wood v. Houston Belt & Terminal Ry.*, 958 F.2d 95, 97 (5th Cir.1992). There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

If no issue of fact is presented and if the mover is entitled to judgment as a matter of law, the court is required to render the judgment prayed for. Fed. R.

---

[3] Where the nonmoving party has the burden of proof at trial, the moving party does not have to produce evidence which would negate the existence of material facts. It meets its burden by simply pointing out the absence of evidence supporting the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325. To oppose the summary judgment motion successfully, the non-moving party must then be able to establish elements essential to its case on which it will bear the burden of proof at trial. A complete failure of proof by the non-moving party of these essential elements renders all other facts immaterial. *Id.* at 322.

Civ. P. 56(c) *Celotex Corp.*, 477 U.S. at 322. Before it can find that there are no genuine issues of material fact, however, the court must be satisfied that no reasonable trier of fact could have found for the non-moving party. *Id.*

## III. LAW AND ANALYSIS

A. <u>*Availability of Attorney's Fees*</u>

Plaintiffs argue that, should they prevail on the merits, they will be entitled to attorney's fees. It is well settled in Louisiana that a party may not recover attorney's fees except where authorized by contract or by statute. *Coates v. Anso Insulations, Inc.*, 2000-1331 (La. App. 4 Cir. 3/21/01), 786 So.2d 749, 755; *See also State, DOTD & Dev. v. Williamson,* 597 So.2d 439, 441 (La.1992)*; General Motors Acceptance Corp. v. Meyers,* 385 So.2d 245, 247 (La.1980)*; Ogea v. Loffland Bros. Co.,* 622 F.2d 186, 190 (5th Cir.1980). Defendant argues that, in the event plaintiffs prevail on the merits, there is no statutory or contractual provision giving rise to liability for attorney's fees in this case. Plaintiffs, however, argue that a partnership or joint venture existed between plaintiffs and defendant and that, as a special relationship existed between the parties, attorney's fees are available under Louisiana Civil Code Article 1997.[4]

Civil Code Article 1997 states that, "An obligor in bad faith is liable for all the damages, foreseeable or not, that are a direct consequence of his failure to perform." La. Civ. Code Art. 1997. While not specifically permitting attorney's fees on its face, plaintiffs argue that the attorney's fees incurred as a result of

---

[4] Plaintiffs make no argument that attorney's fees are contractually available.

defendant's alleged bad faith were a "direct consequence" of defendant's actions and thus are compensable. Plaintiffs' argument, however, is belied by both state and federal jurisprudence interpreting this article. *See i.e. Sher v. Lafayette Ins. Co.*, 2007-2441, 2007-2443 (La. 4/8/08), 988 So.2d 186, 201 ("Article 1997 does not provide for an award of attorney's fees"); *and David Y. Martin, Jr., Inc. v. Heublein, Inc.*, 943 F.Supp. 637 (E.D.La 1996) (holding that article 1997 does not permit an award of attorney's fees). As such, defendant's motion on this point will be granted.[5]

B.      *Termination of the Johnson Lease*

Defendant next seeks a judicial determination that the lease covering the C.B. Johnson No. 1 Well (the "Johnson Lease") terminated on or about August 17, 2004. The Johnson Lease became effective on February 1, 1986 and provided a primary term of three years. The lease continued in effect so long as the well continued to produce. However, if the well ceased to produce and was shut in after the primary term of the lease, the lease would terminate unless the lessees took certain actions to "save the lease" within ninety days of the shut in. On August 17, 2004, the well ceased to produce and was, in fact, shut in. Sevarg timely informed Concha of the shut in, of Sevarg's intention not to maintain the lease, and the remaining time before the lease would terminate by letter. It is

---

[5]      Plaintiffs state that they are entitled to attorney's fees, ". . . *under many legal theories, most importantly under Louisiana's business law partnership law, commerce law, and specifically La. C.C. art. 1997.*" *Plaintiff's Memorandum in Opposition to Motion for Partial Summary Judgment* [Rec. Doc. 68], pgs. 3-4 (emphasis original). As plaintiffs cite no specific statute, other than article 1997, and no contractual provision to support their conclusory and self-serving claim, plaintiffs have failed to carry their burden on this issue.

undisputed that, despite this notice, neither Concha nor any other lessee took the required actions to maintain the lease.

Despite this, plaintiffs argue, without any supporting evidence or cited law, that "[i]t was never the Plaintiffs' contentions [*sic*] not to produce; it was the letter received that led them to believe that it would not be in the best interest of the companies to invest more money into this well." *Plaintiff's Memorandum in Opposition to Motion for Partial Summary Judgment* [Rec. Doc. 68], pg.4. This unsubstantiated statement alone is patently insufficient to defeat summary judgment on this issue. Further, were the statement true, it still would not change the ultimate outcome as it is undisputed that, for whatever reason, plaintiffs did not take the required action to save the lease. Whether or not plaintiffs relied on the statements contained in the letter to their detriment is not dispositive on the issue of whether the lease did, in fact, terminate. Accordingly, plaintiffs' arguments fail and defendant's motion will be granted on this issue as well.

C.    <u>Impact of Assignment to Bean Resources</u>

Next, defendant argues that it is entitled to summary judgment on plaintiffs' claims regarding the impact of the assignment of defendant's interest in certain wells to Bean. Defendant argues that, as Sevarg could only assign its own interests to Bean, the assignment had no impact on plaintiffs. In response, plaintiffs state that "Bean only had access to the recorded Assignment, which does not connect or provide notice of Plaintiff's working interest or partnership or joint venture interests." *Plaintiff's Memorandum in Opposition to Motion for*

*Partial Summary Judgment* [Rec. Doc. 68], pgs.4-5.

It is unclear to the Court how plaintiffs' argument is intended to defeat summary judgment. Plaintiffs produce no evidence in support of their statement and, in fact, state that if Bean knew of plaintiffs' interests, Bean would be responsible for whatever harm is claimed as a result of this assignment. Indeed, plaintiffs have filed suit against Bean in this Court on this very issue. Accordingly, as plaintiffs have not pointed to any evidence in support of its contention that the assignment to Bean was detrimental to their interests and as they admit that Bean is responsible for any harm caused by the assignment, the Court will grant defendant's motion on this issue.

D.    <u>Valentine's Overriding Royalty Interest</u>

Defendant argues that the Valentine's overriding royalty interest was cancelled by the confirmation of Sevarg's bankruptcy plan. Plaintiffs, for their part, do not dispute this characterization. While admitting that the original interest was cancelled by the confirmation, plaintiffs argue that defendant's post-bankruptcy conduct created a "special relationship" between plaintiffs and defendant giving rise to certain obligations. Resolution of whether such a "special relationship" existed, however, is not before the Court. Defendant moves only for a determination that the original overriding royalty interest was cancelled by the Plan's confirmation. As plaintiffs do not dispute defendant's argument, the Court will grant defendant's motion on this issue.

*E.*      *Defendant's Counterclaims*

*1.*      *Liability for Terminated Leases*

On October 5, 2004, the bankruptcy court entered an order allowing four separately filed claims by Bills to be paid in the amount of $356,087. These claims arose from conveyances made to Bills and burdening certain leases that are the subject of this case. Specifically, the conveyances provided that the assignor, Sevarg, was required to give the assignee, Bills, at least 90 days written notice if the assignor elected not to maintain all or any part of the subject leases and provided for damages in the case of a breach. The conveyances were properly recorded on April 20, 1990 and December 22, 1994 – well before HOGI and Concha's acquisition of their respective interests in the leases – and specifically provided that the obligations therein inured to the assignor, its successors, and assigns.

As the conveyances were properly recorded, upon HOGI and Concha acquiring their 25% interest in the subject leases from Sevarg each party became jointly and severally liable to Bills for any amount due. La. C.C. Art. 1800. As no party provided the requisite notice to Bills upon the alleged expiration of the leases, the bankruptcy court ruled that damages were owed to Bills in the bankruptcy proceeding. Sevarg, pursuant to the order of the bankruptcy court, paid the whole amount of the claims and now seeks contribution from Concha and HOGI for their 25% proportionate liability for this debt.

Louisiana Civil Code Article 1804 allows a solidary obligor who has

rendered the whole performance to ". . . claim from the other obligors no more than the virile portion of each." La. Civ. Code Art. 1804; *See also Vaughn v. Franklin*, 2000-0291 (La. App. 1 Cir. 3/28/01), 785 So.2d 79, 88-89 ("In general, the solidary obligor who extinguishes the debt is entitled to a right of contribution against his codebtors, but must divide his action so that he can demand from each one of them no more than his virile portion.") (*quoting Great Southwest Fire Ins. Co. v. CNA Ins. Co.*, 557 So.2d 966, 969 (La. 1990)). The claim for damages was decided in favor of Bills during the bankruptcy of Sevarg, but plaintiffs nonetheless argue that the leases were not cancelled and, thus, neither notice nor damages were due. From the record before this Court, it is unclear whether or not plaintiffs had an opportunity to object to the award of damages to Bills in the bankruptcy proceeding. If the plaintiffs did not have an opportunity to object in the bankruptcy proceeding, due process would require that defendant introduce evidence tending to show that the obligation was, in fact, due and payable. *See Andry v. Murphy Oil, U.S.A., Inc.*, 2005-0126 (La. App. 4 Cir. 2006), 935 So.2d 239, 260. Here, it is unclear from the record whether or not plaintiffs had such an opportunity. Thus, there exists a material issue of fact sufficient to defeat summary judgment on this issue and the Court will deny defendant's motion on this issue.

2.  *Contractual Penalty*

Defendant alleges that, despite being given adequate notice, Concha failed to pay its proportionate share of the costs of a work over performed on the

Vautrot #1 saltwater disposal well in August of 2003 pursuant to the Operating Agreement then in effect. As a result, defendant argues that Concha is liable for the 300% contractual penalty contained in the Operating Agreement.[6] In response, Concha argues that, under the Operating Agreement, defendant ceased to be the operator of the well upon entering bankruptcy and thus is not owed the 300% contractual penalty.

Concha raises a valid point. Defendant filed a petition for bankruptcy on August 16, 2002. The work over allegedly giving rise to the penalty occurred in August of 2003. The Operating Agreement clearly states that "If Operator [Sevarg] becomes insolvent, bankrupt or is placed in receivership, it shall be deemed to have resigned without any action by Non-Operators, except the selection of a successor." That section of the Operating Agreement also sets forth the manner in which the well is to be operated after the operator is placed into bankruptcy. Defendant has provided no evidence to show that this procedure was followed to commence the work over at issue. As such, material issues of fact remain and the Court will deny defendant's motion on this issue.

## IV.    CONCLUSION

On each issue raised by defendant in its Motion for Partial Summary Judgment on Plaintiffs' Claims [Rec. Doc. 64], plaintiffs failed to come forth with evidence sufficient to survive summary judgment. Accordingly, defendant's motion [Rec. Doc. 64] will be **GRANTED**. However, in its Motion for Summary

---

[6]    Defendant does not allege that Concha is liable for its proportionate cost of the work over as that amount was withheld from the revenue payments to Concha.

Judgment on Counterclaims [Rec. Doc. 66] where the defendant bore the burden

of proof, material issues of fact remain and defendant's motion [Rec. Doc. 66] will

be **DENIED**.